# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOED VALENTIN-MORALES,<br><br>    Petitioner,<br><br>       v.<br><br>VINCENT MOONEY, et al.,<br><br>    Respondents. | 2:13-cv-3271-WY |

## MEMORANDUM

YOHN, J.                                                                                              September 24, 2014

      Joed Valentin-Morales, an inmate at the State Correctional Institution at Coal Township, has filed a pro se petition for a writ of habeas corpus. Valentin-Morales was convicted of attempted homicide, aggravated assault, and reckless endangerment in the Lehigh County Court of Common Pleas, and sentenced thereafter to a total of 28 ½- 60 years incarceration. The magistrate judge issued a report and recommendation that the petition be denied.

      After conducting a de novo review of the magistrate judge's report and recommendation, and upon careful consideration of Valentin-Morales's objections thereto, I will deny the petition as to two of Valentin-Morales's claims, and I will order additional briefing from the Commonwealth as to the third.

**I.**    **Factual and Procedural Background**

      The Pennsylvania Superior Court, in reviewing Valentin-Morales's direct appeal, summarized the facts which led to his arrest as follows:

> In the early morning hours of June 27, 2007, Gabriel Morales, a cousin of [Valentin-Morales]'s girlfriend, was beaten up as he walked past a porch where

1

his attackers were sitting. Morales fled to an apartment building where he and [Valentin-Morales] both resided, and barricaded himself inside. He was pursued by his attackers, among them Marisol Ramos and Michael Orasio, who after pounding on the door left the immediate area after hearing someone threaten to call the police. When [Valentin-Morales], disturbed by the noise, saw his friend's injuries, he retrieved his shotgun, and chasing Orasio and Ramos down the street, confronted them. Seeing the weapon, both victims raised their hands to show they were unarmed, but [Valentin-Morales], from about 10 feet away fired the shotgun, first at Ramos, and then after reloading, at Orasio who was attempting to flee. [Valentin-Morales] then hid the shotgun. Ramos's wounds necessitated removal of the midsection of her large intestine and a piece of her small intestine; her right arm, after attempts to save it failed, was eventually amputated. Orasio's injuries, less serious but also life-threatening, required extended hospitalization.

On June 5, 2008, at the conclusion of a four day jury trial in the Lehigh County Court of Common Pleas, Valentin-Morales was found guilty of two counts each of attempted criminal homicide, first degree aggravated assault, second degree aggravated assault, and second degree reckless endangerment of another person. On July 15, 2010, the trial court sentenced Valentin-Morales to 20-40 years imprisonment and 28 ½-20 years imprisonment for the respective attempted homicide convictions.[1] The court imposed the sentences consecutively, for an aggregate of 28 ½-60 years incarceration.

On direct appeal to the Pennsylvania Superior Court, Valentin-Morales raised three claims: (1) the evidence was insufficient to show that he had the requisite mens rea for attempted homicide; (2) the attempted homicide conviction was against the weight of the evidence; and (3) the sentence was an abuse of the trial court's discretion. On June 23, 2010, the Superior Court affirmed the trial court's judgment of sentence. *See Com. v. Morales*, 4 A.3d 697 (Pa. Super. Ct. 2010). On October 15, 2010, the Pennsylvania Supreme Court denied Valentin-Morales's Petition for Allowance of Appeal. *See Com. v. Valentin-Morales*, 8 A.3d 899 (Pa. 2010).

---

[1] The trial court found that the other offenses of which Valentin-Morales was convicted merged with the attempted homicide charges, and did not impose sentences for those offenses.

2

On April 20, 2011, Valentin-Morales filed a pro se petition for relief under the Pennsylvania Post-Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. §§ 9541 *et seq.* Counsel was thereafter appointed to represent Valentin-Morales, and substantive review was based on Valentin-Morales's amended PCRA petition, which was counseled. The amended PCRA petition raised four claims: (1) ineffective assistance of his trial counsel for failure to request a self-defense instruction; (2) ineffectiveness of trial counsel for failure to investigate and call an alleged eyewitness, Emma Rosado; (3) ineffective assistance of appellate counsel for failing to argue that trial counsel was ineffective on direct appeal; and (4) newly discovered evidence demonstrative of innocence, specifically Gabriel Morales's recantation of his trial testimony for the Commonwealth. The amended PCRA petition included an affidavit from Rosado swearing that she saw Valentin-Morales shoot the victims in apparent self-defense, and an affidavit from Morales swearing that he gave false testimony. Valentin-Morales, Rosado, and Morales testified at a PCRA hearing on October 4, 2011. Defense attorney John Walfish and Assistant District Attorney Jeffrey Burd also testified. On November 15, 2011, the PCRA court denied Valentin-Morales's petition.

After the denial of his PCRA petition, Valentin-Morales filed a timely appeal to the Pennsylvania Superior Court, raising two issues for review: (1) ineffective assistance of trial counsel for failing to investigate and call Rosado; and (2) actual innocence based on Morales's recantation of his trial testimony. The Superior Court denied PCRA relief on August 8, 2012, and, on January 16, 2013, the Pennsylvania Supreme Court declined Valentin-Morales's Petition for Allowance of Appeal. *See Com. v. Morales*, 60 A.3d 562 (Pa. Super. Ct. 2012) *appeal denied,* 619 Pa. 678 (2013).

On June 10, 2013, Valentin-Morales filed the instant habeas petition pursuant to 28 U.S.C. § 2254, raising three claims: (1) ineffective assistance of trial counsel for failing to investigate and call Rosado; (2) violation of due process based on the PCRA court's refusal to order a new trial based on Morales's recantation; and (3) ineffective assistance of trial counsel for failing to inform Valentin-Morales of a plea offer.

On February 27, 2014, the magistrate judge issued a report and recommendation recommending that the district court deny Valentin-Morales's petition as to each of his three claims. Valentin-Morales thereafter filed objections to each portion of the magistrate judge's report and recommendation.

## II.     Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §§ 2841 *et seq.*, governs the court's review of this habeas petition. Under AEDPA, a "district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." *Id*. § 2254(a). Habeas relief is unwarranted "with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States," § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2).

Where a habeas petition has been referred to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B), the court reviews de novo those portions of the magistrate judge's findings or recommendations to which objection is made. 28 U.S.C. § 636(b)(1).

## III.  Discussion

### A.  Ineffective Assistance of Counsel—Rosado's Testimony

Valentin-Morales's first claim is that his trial counsel was ineffective for failing to investigate and/or call Rosado as a witness at his trial. Valentin-Morales raised this claim before the PCRA court and the Pennsylvania Superior Court on his PCRA appeal. According to Rosado's affidavit, immediately prior to the shooting, she witnessed Orasio "quickly reach into what seemed his [waist] area under his shirt and pull out what seemed to be a gun."

"The Supreme Court established the legal principles governing Sixth Amendment claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984)." *Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013). *Strickland* sets forth a two part test. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Second, "the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. Under this framework, counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (quoting *Strickland*, 466 U.S. at 690).

The standards of *Strickland* require a court to "take a highly deferential look at counsel's performance" in evaluating an ineffectiveness claim. *Pinholster*, 131 S. Ct. at 1403. But the

review is "doubly deferential" for a federal habeas court reviewing "through the deferential lens of § 2254(d)." *Id*. "When a federal habeas petition under § 2254 is based upon an ineffective assistance of counsel claim, '[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.'" *Grant*, 709 F.3d at 232 (quoting *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011)). "This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington*, 131 S. Ct. at 785. Accordingly, "[a] state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself." *Id*.

      Finally, when the Pennsylvania Superior Court assessed Valentin-Morales's ineffective assistance of counsel claim in his PCRA appeal, it applied Pennsylvania state law standards for ineffective assistance of counsel for failure to call a witness. *See Com. v. Johnson*, 966 A.2d 523 (Pa. 2009). In Pennsylvania, to succeed on an ineffective assistance of counsel claim for failing to call a witness, a PCRA petitioner must show that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial. *Id*. These standards derive from *Commonwealth v. Pierce*, 527 A.2d 973 (Pa. 1987). The Pennsylvania Supreme Court has held that the standards of *Pierce* and *Strickland* "constitute the same rule," *Pierce*, 527 A.2d at 976-77. The Third Circuit has held that, at a minimum, the standards of *Pierce* are not "contrary to" those of *Strickland* for purposes of AEDPA. *See Werts v. Vaughn*, 228 F.3d 178, 204 (3d Cir. 2000). Accordingly, application of *Pierce* and its progeny—including *Johnson*—will not result in a decision that is "contrary to, or involving an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United

States." *See* § 2254(d)1); *Werts*, 228 F.3d at 204. In any event, "the five requirements set forth by the Pennsylvania Supreme Court [in *Johnson*] would necessarily need to be shown to prevail under *Strickland* on a claim of this nature." *Moore v. DiGuglielmo*, 489 Fed. Appx. 618, 626 (3d Cir. 2012) *cert. denied,* 133 S. Ct. 622 (U.S. 2012).

The Pennsylvania Superior Court denied Valentin-Morales's claim on the basis that trial counsel was never aware of Rosado's potential testimony. At the PCRA hearing, Valentin-Morales testified that he informed his trial counsel that Rosado was a potential witness. He also offered into evidence three handwritten letters regarding Rosado's potential testimony that Valentin-Morales testified he sent to Walfish prior to trial. *See* PCRA Hearing N.T., at *18. Trial counsel testified that he did not receive the purported letters and they were not in his case file, that Valentin-Morales never informed him of Rosado's potential testimony, and that he did not otherwise learn of Rosado's existence despite conducting an investigation into potential witnesses. *See id.* at *57-58. Evaluating the competing allegations of Valentin-Morales and his trial counsel, the PCRA court found the following:

> A review of the testimony presented at the PCRA hearing supports the determination that Attorney Walfish was credible, and the testimony presented by the petitioner was manufactured. For example, the affidavit attached to the PCRA petition purporting to be Ms. Rosado's was neither written nor reviewed by her. Instead, it was prepared in English, a language Ms. Rosado does not understand, with instructions to her from the petitioner to have it signed and notarized
> . . . .
> The testimony of Attorney Walfish was credible and demonstrated that he was never told that Ms. Rosado was a potential witness. Attorney Walfish, an experienced trial attorney, did call an eyewitness, Yasmin Morales, in an effort to support the theory of defense. If Ms. Rosado was a potential witness who was known to him, there is no logical reason why he would not have presented her testimony. In fact, Ms. Rosado never came forward with her version of the events until the PCRA hearing, and that testimony was fraught with doubts about its veracity. It was also contradicted by the videotape from a surveillance camera from a local market which depicted the shooting outside and near the Motown Bar, not where Ms. Rosado claimed the shooting unfolded.

On appeal, the Pennsylvania Superior Court found support on the record for the PCRA court's determination that Walfish was credible and Valentin-Morales was not, and it adopted that determination of the PCRA Court on that basis. Ruling that Valentin-Morales had "not established that Walfish knew or should have known of the existence of Emma Rosado as a potential witness," the Superior Court denied the ineffective assistance claim based on failure to call Rosado under *Johnson*. See *Johnson*, 966 A.2d at 536.

"The federal habeas statute provides us 'no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by [us].'" *Weeks v. Snyder*, 219 F.3d 245, 258 (3d Cir. 2000) (quoting *Marshall v. Lonberger,* 459 U.S. 422, 434 (1983)). Given Walfish's credited testimony at the PCRA hearing that nobody informed him of the potential testimony of Rosado—and the absence of any evidence, apart from Valentin-Morales's contradictory, self-serving testimony, showing that Walfish knew or should have known of Rosado—the finding that Walfish neither knew nor should have known of Rosado was not "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *See* § 2254(d)(2). As a result, federal habeas relief is not available because the Pennsylvania courts denied a claim on the basis that counsel cannot be ineffective for failing to call a witness that counsel neither knew nor should have known of. *See* § 2254(d)(1); *Werts*, 228 F.3d at 204; *Moore*, 489 Fed. Appx. at 626. There is no basis for relief on Valentin-Morales's ineffective assistance of counsel claim for failure to call Rosado, and I will deny Valentin-Morales's claim.

B. **Morales's Recantation**

Valentin-Morales next brings a due process claim under the Sixth Amendment and Fourteenth Amendment based on the PCRA court's refusal to order a new trial based on Morales's recantation of his trial testimony.[2]

To show a due process violation based on false testimony at trial, a habeas petitioner must show (1) that a government witness committed perjury; (2) the government knew or should have known of the perjury; (3) the testimony went uncorrected; and (4) there is any reasonable likelihood that the false testimony could have affected the verdict. *Lambert v. Blackwell*, 387 F.3d 210, 242 (3d Cir. 2004) ("The Supreme Court has long held that the state's knowing use of perjured testimony to obtain a conviction violates the Fourteenth Amendment. In such circumstances, the conviction must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.").

---

[2] Valentin-Morales's amended PCRA petition mentioned Morales's recantation only insofar as to say that "Petitioner has newly discovered evidence which was not available at the time o[f] trial, namely, Gabriel Morales, a Commonwealth witness has admitted to lying at trial. (See the attached affidavit)." The PCRA Court and the Superior Court understood this statement to raise a claim under Pennsylvania's after-discovered evidence rule, 42 Pa. C.S.A. § 9543(a)(2)(vi), and they denied that claim under the legal standards applicable to that provision. *See Com. v. Smith*, 609 Pa. 605, 629 (2011). Even if this ruling were incorrect, which I do not so find, an error by a state court in applying state law is not cognizable in a federal habeas action. There must be an alleged violation of the Constitution or laws or treaties of the United States.

The question of whether Valentin-Morales's due process claim here is exhausted under 28 U.S.C. § 2254(b)(1) has not been raised by the Commonwealth or addressed by the magistrate judge, and Valentin-Morales has not addressed either that he exhausted, or, alternatively, why there is cause and prejudice for his failure to exhaust. Under these circumstances, and in light of the fact that Valentin-Morales does not, in any event, state a due process claim, I decline to address whether Valentin-Morales fairly presented his due process claim to the Pennsylvania courts. *See Sweger v. Chesney*, 294 F.3d 506, 520-21 (3d Cir. 2002) ("A district court [] has the discretion to raise the issue [of whether the claim is procedurally defaulted] sua sponte."). *Cf. McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999) ("To fairly present a claim to a state court, a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted.").

According to Valentin-Morales, Morales's testimony at trial was false and contributed to his conviction. But Valentin-Morales does not allege in his habeas petition—nor in his counseled amended PCRA petition—that anyone associated with the Commonwealth knew or should have known that Morales's testimony at trial was false. Thus, there is nothing in the record from which a reasonable person could find that the Commonwealth knew or should have known that Morales's testimony was perjurious. Much to the contrary, when Morales was questioned at the PCRA hearing about his conversations with Commonwealth prosecutors, he testified that the prosecutors pressured him to tell the truth, telling him that "if I don't tell the truth I was going to go to a state [prison]." *See* PCRA Hearing N.T., at \*91.

Lacking either an allegation or a showing that the Commonwealth knew or should have known that Morales's testimony was perjurious, Valentin-Morales fails to state a due process claim on the basis of Morales's alleged perjury. *See Lambert*, 387 F.3d at 242. He therefore has no entitlement to habeas relief on the basis of a due process violation.[3]

### C.   Ineffective Assistance of Counsel—Uncommunicated Plea Offer

Valentin-Morales's final claim is alleged ineffective assistance of counsel based on the allegation that trial counsel failed to inform him of a favorable plea offer. This claim is based on Walfish's apparently hearsay testimony at the PCRA hearing. In the course of explaining that Valentin-Morales had previously been represented by Walfish's law firm partner, Gregory Noonan, Walfish mentioned the following:

---

[3] On the information presented to the court, the alleged perjury of Morales does not provide any other basis for federal habeas relief, either. *See* 28 U.S.C. § 2254(a) ("A district court . . . shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."); *Herrera v. Collins,* 506 U.S. 390, 400 (1993) ("Claims . . . based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.").

> [W]hen Mr. Noonan got to a point with his negotiations with Mr. Burd, [the Assistant District Attorney], it became obvious that it would not resolve in a plea, I think Mr. Burd was looking for an aggravated assault and I think a five to ten. And Mr. [Valentin-]Morales was not interested in that, so I was brought in at that point to try the case, which is our practice, and I believe that that was when I met Mr. Valentin-Morales was on May 23rd of 08.

*See* PCRA Hearing N.T., at *55. Valentin-Morales alleges that he was not informed of a plea offer involving a five to ten year sentence. He further alleges that, after the PCRA hearing, he communicated this fact to his PCRA counsel, and that he asked PCRA counsel to supplement his amended PCRA petition with a new ineffectiveness claim accordingly.

Valentin-Morales concedes that this claim is procedurally defaulted for failure to exhaust because he did not present this claim to the Pennsylvania courts and he cannot do so now. *See* 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). However, "[p]rocedural default may be excused when the petitioner can prove both 'cause' for the default and 'actual prejudice' that resulted from the failure of the state court to hear the claim." *Glenn v. Wynder*, 743 F.3d 402, 409-10 (3d Cir. 2014) *cert. denied,* 134 S. Ct. 2700 (U.S. 2014). As Valentin-Morales notes, "[u]nder *Martinez* [*v. Ryan*, 132 S.Ct. 1309 (2012)], the failure of collateral attack counsel to raise an ineffective assistance of trial counsel claim in an initial-review collateral proceeding can constitute 'cause' if (1) collateral attack counsel's failure itself constituted ineffective assistance of counsel under *Strickland*, and (2) the underlying ineffective assistance of trial counsel claim is 'a substantial one.'" *Id.* (citing *Martinez*, 132 S.Ct. at 1319).

Valentin-Morales contends his procedural default should be excused under *Martinez* because his PCRA proceeding was an initial-review collateral proceeding; he can show that his PCRA counsel was ineffective for failing to supplement the amended PCRA petition with a claim that trial counsel was ineffective for failing to convey a plea offer; and he can show that the claim of trial counsel's ineffectiveness has at least some merit. Despite this argument—which

Valentin-Morales presents at length and in detail in all three memoranda he has submitted to the court—the Commonwealth does not respond to Valentin-Morales's arguments under *Martinez*. Rather, in its lone submission to the court, the Commonwealth states as to procedural default only that "this claim has never been fairly presented[;] hence, Petitioner's claims are unexhausted and precluded from federal review." *See* Gov. Opp. Brief at *8.

In the report and recommendation, the magistrate judge addressed Valentin-Morales's *Martinez* argument. Her assessment was that *Martinez* did not apply because the underlying ineffectiveness claim was meritless, and therefore PCRA counsel could not have been ineffective for failing to amend the PCRA petition to include it. As the magistrate judge explained:

> The Commonwealth represents that the plea offer alleged by petitioner was never in fact made by the Commonwealth. Moreover, the transcript shows Attorney Walfish was not specifically testifying regarding a plea offer—he merely stated he took over representation from the other law partner in his firm after it became apparent that the case was moving to trial. Because the plea offer that petitioner alleges he learned of during the PCRA hearing was never in fact made, PCRA counsel cannot be deemed ineffective for failing to amend the PCRA petition to include the underlying effectiveness claim since this claim would have been meritless and without factual support.

Doc. 17, at *13. In his objections, Valentin-Morales repeats that he was not informed of the plea offer about which Walfish testified. He supplements his objections with a new submission: copies of three handwritten, Spanish-language letters addressed to PCRA counsel and which, according to Valentin-Morales, communicated his desire to further amend his PCRA petition to add the new ineffectiveness claim. The Commonwealth did not file a response to Valentin-Morales's objections.

In light of the information presented to the court, there is not a sufficient basis to conclude either that Valentin-Morales makes the showing required by *Martinez* or that he does not make the showing required by *Martinez*.

12

As an initial matter, Valentin-Morales's PCRA proceeding was an initial-review collateral proceeding for purposes of *Martinez*. A collateral proceeding is *Martinez*-eligible "where [the] state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal[.]" *Trevino v. Thaler*, 133 S. Ct. 1911, 1921 (2013). This description applies to how ineffective assistance of counsel claims are treated in Pennsylvania, where "claims of ineffective assistance of counsel are to be deferred to PCRA review; trial courts should not entertain claims of ineffectiveness upon post-verdict motions; and such claims should not be reviewed upon direct appeal." *Com. v. Holmes*, 79 A.3d 562, 576 (Pa. 2013). *See also Commonwealth v. Grant,* 813 A.3d 726, 733, 737 (Pa. 2002) (citing a "myriad of impracticalities" and "difficulties" impinging on a prisoner's ability to raise ineffective assistance of trial claims on direct appeal). Accordingly, Valentin-Morales's procedural default will be excused if he can show both that his PCRA counsel was ineffective under *Strickland*, and that his claim that his trial counsel was ineffective under *Strickland* is a substantial one. *See Glenn*, 743 F.3d at 409-10.

As to the underlying claim that trial counsel was ineffective for failing to communicate a favorable plea offer, there is not sufficient evidence to determine what, if any, plea offers were made by the Commonwealth to Valentin-Morales's attorneys. The Commonwealth's assertion in its response brief that its only offer involved concurrently running sentences on attempted homicide pleas is not supported by evidence.[4] Meanwhile, Walfish testified to the contrary under oath when he stated that it was his understanding that the prosecutor on the case "was looking for

---

[4] The Commonwealth's prosecutor at trial, Jeff Burd, Esq., testified at Valentin-Morales's PCRA hearing, but his testimony did not discuss plea negotiations with Valentin-Morales's counsel. Burd has not entered a declaration in connection with this federal habeas proceeding.

an aggravated assault and I think a five to ten."[5] *See* PCRA Hearing N.T., at *55. Second, there is not sufficient evidence to determine whether any of the alleged plea offers were conveyed to Valentin-Morales by either of his attorneys. Although Walfish stated in his testimony that "Valentin-Morales was not interested in" the alleged five to ten year plea offer, *see id.*, Valentin-Morales contends he was not informed of either alleged plea offer.[6] In the absence of further information about what, if anything, the Commonwealth offered, and/or what, if anything, Valentin-Morales knew of these offers, I cannot conclude that Valentin-Morales does not present a substantial claim for ineffective assistance of trial counsel. *See U.S. ex rel. Caruso v. Zelinsky*, 689 F.2d 435, 437 (3d Cir. 1982) (holding that counsel's failure to convey a plea bargain offer would violate the defendant's Sixth and Fourteenth Amendment rights) *accord Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012) ("[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused.").

As to PCRA counsel's alleged ineffectiveness, I am unable to resolve this question based on the present record, either. PCRA counsel has not been heard from, and the court therefore lacks corroboration or rebuttal of Valentin-Morales's alleged correspondence to him about the claim, nor does it have any evidence of PCRA counsel's decisionmaking process with regard to Valentin-Morales's alleged request to supplement his amended PCRA petition.[7] In the absence of additional information regarding what PCRA counsel knew about Valentin-Morales's

---

[5] This statement appears to be hearsay from Walfish's partner, Noonan, who Walfish testified conducted the plea negotiations with Burd and represented Valentin-Morales for the majority of the pre-trial period.

[6] This statement by Walfish also appears to be based on hearsay from Noonan, as Walfish did not testify that he personally communicated with Valentin-Morales about plea offers and Noonan was responsible for plea negotiations with the Commonwealth.

[7] It does not escape the court that, when Valentin-Morales submitted purported communications between him and Walfish to the PCRA court regarding Rosado, Walfish denied that he had received the communications, and the PCRA court found that Walfish was credible and Valentin-Morales was not.

potential additional ineffectiveness claim and/or why he decided not to supplement Valentin-Morales's petition, I cannot determine whether he was ineffective within the meaning of *Strickland*.

Because on the gaps in the record on the questions of whether Valentin-Morales's PCRA counsel was ineffective under *Martinez* and whether his trial counsel was ineffective, I will not make a decision on Valentin-Morales's third claim at this time. Although it may well be that an evidentiary hearing will ultimately be necessary, I will initially direct the parties to provide additional briefing. The Commonwealth will be directed to provide an additional brief on the issues raised by *Martinez* as to PCRA counsel and the ineffectiveness of trial counsel concerning the alleged uncommunicated plea offer within twenty days, and Valentin-Morales may then respond to the Commonwealth's brief within twenty days thereafter.

An appropriate order follows.