# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOED VALENTIN-MORALES,

    Petitioner,

        v.

VINCENT MOONEY, et al.,

    Respondents.

CASE NO. 13-cv-3271

## MEMORANDUM

YOHN, J.                                                                                                                February 11, 2015

      Joed Valentin-Morales was convicted of attempted criminal homicide, aggravated assault, and reckless endangerment in the Lehigh County Court of Common Pleas and was sentenced to a term of 28 ½ to 60 years in prison. Now an inmate at the State Correctional Institution at Coal Township, Valentin-Morales has filed a pro se petition for a writ of habeas corpus. I reviewed de novo the magistrate judge's report and recommendation and carefully weighed Valentin-Morales's objections thereto, after which I denied the petition as to two of Valentin-Morales's claims and ordered supplemental briefing as to the third. Having now considered the additional filings, I will deny Valentin-Morales's remaining claim as well.

## I.    Factual and Procedural Background[1]

      The Pennsylvania Superior Court, in reviewing Valentin-Morales's direct appeal, summarized the facts of the underlying case as follows:

---

[1] A more comprehensive history of this case can be found in *Valentin-Morales v. Mooney*, No. 2:13-CV-3271-WY, 2014 WL 4744560, at *1-2 (E.D. Pa. Sept. 24, 2014).

1

In the early morning hours of June 27, 2007, Gabriel Morales, a cousin of [Valentin-Morales]'s girlfriend, was beaten up as he walked past a porch where his attackers were sitting. Morales fled to an apartment building where he and [Valentin-Morales] both resided, and barricaded himself inside. He was pursued by his attackers, among them Marisol Ramos and Michael Orasio, who after pounding on the door left the immediate area after hearing someone threaten to call the police. When [Valentin-Morales], disturbed by the noise, saw his friend's injuries, he retrieved his shotgun, and chasing Orasio and Ramos down the street, confronted them. Seeing the weapon, both victims raised their hands to show they were unarmed, but [Valentin-Morales], from about 10 feet away fired the shotgun, first at Ramos, and then after reloading, at Orasio who was attempting to flee. [Valentin-Morales] then hid the shotgun. Ramos's wounds necessitated removal of the midsection of her large intestine and a piece of her small intestine; her right arm, after attempts to save it failed, was eventually amputated. Orasio's injuries, less serious but also life-threatening, required extended hospitalization.

On June 5, 2008, Valentin-Morales was found guilty of two counts each of attempted criminal homicide, first degree aggravated assault, second degree aggravated assault, and second degree reckless endangerment of another person. On July 15, 2008, the Lehigh County Court of Common Pleas sentenced Valentin-Morales to 8 ½ to 20 years on the count of attempted criminal homicide and 20 to 40 years on the count of attempted criminal homicide with serious bodily injury.[2] The court imposed these sentences consecutively for an aggregate term of 28 ½ to 60 years. Valentin-Morales filed a direct appeal to the Pennsylvania Superior Court, which affirmed the trial court's judgment. *Com. v. Morales*, 4 A.3d 697 (Pa. Super. Ct. 2010). The Pennsylvania Supreme Court denied Valentin-Morales's Petition for Allowance of Appeal. *Com. v. Valentin-Morales*, 8 A.3d 899 (Pa. 2010).

On April 20, 2011, Valentin-Morales began the collateral review process by filing a pro se petition under the Pennsylvania Post-Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. §§ 9541 *et seq.* Counsel was appointed to represent Valentin-Morales, and substantive review was based on Valentin-Morales's counseled, amended PCRA petition. Valentin-Morales,

---

[2] The trial court found that the other offenses of which Valentin-Morales was convicted merged with the attempted homicide charges and therefore did not impose sentences for those offenses.

2

trial defense attorney John Walfish, and assistant district attorney Jeffrey Burd testified at a PCRA hearing on October 4, 2011. On November 15, 2011, the PCRA court denied Valentin-Morales's petition. Valentin-Morales filed a timely appeal to the Pennsylvania Superior Court, which denied PCRA relief on August 8, 2012, and on January 16, 2013, the Pennsylvania Supreme Court declined Valentin-Morales's Petition for Allowance of Appeal. *See Com. v. Morales*, 60 A.3d 562 (Pa. Super. Ct. 2012), *appeal denied,* 619 Pa. 678 (2013).

On June 10, 2013, Valentin-Morales filed a federal habeas petition pursuant to 28 U.S.C. § 2254, raising three claims: (1) ineffective assistance of trial counsel for failing to investigate and call an alleged eyewitness; (2) violation of due process based on the PCRA court's refusal to order a new trial based on another witness's recantation; and (3) ineffective assistance of trial counsel for failing to convey to Valentin-Morales a plea offer made by the district attorney's office. On February 27, 2014, the magistrate judge issued a report and recommendation ("R&R") advising that the district court deny Valentin-Morales's petition on all claims. Valentin-Morales filed objections to each portion of the R&R. On September 24, 2014, I denied the first and second claims in Valentin-Morales's petition and ordered the Commonwealth to submit additional briefing on the third. That briefing was filed on October 21, 2014, and Valentin-Morales filed a response on November 12, 2014.

## II. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs the court's review of this habeas petition. Under AEDPA, a "district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Habeas relief is not warranted "with respect

3

to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States," § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). Where a habeas petition has been referred to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B), the court reviews de novo those portions of the magistrate judge's findings or recommendations to which objection is made. § 636(b)(1).

## III. Discussion

Only one claim remains at issue: Valentin-Morales asserts that he received ineffective assistance of counsel at trial because the district attorney's office allegedly made a plea offer that was never conveyed to him. *See Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012) ("[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."). Originally, this claim was based on Walfish's testimony at the PCRA hearing. While explaining that the pretrial phase of Valentin-Morales's case was handled by Walfish's partner, Gregory Noonan, Walfish stated:

> [W]hen Mr. Noonan got to a point with his negotiations with Mr. Burd, [the Assistant District Attorney], it became obvious that it would not resolve in a plea, I *think* Mr. Burd was looking for an aggravated assault and I *think* a five to ten. And Mr. [Valentin-]Morales was not interested in that, so I was brought in at that point to try the case, which is our practice, and I believe that that was when I met Mr. Valentin-Morales was on May 23rd of '08.

PCRA Hearing N.T., at *55 (emphases added). I note that this statement appears to contain both hearsay and hearsay-within-hearsay. The existence of the plea offer itself at best was related to Walfish by his partner, Noonan, who conducted the plea negotiations with Burd and represented Valentin–Morales during the pre-trial period. Thus, the alleged plea offer went from Burd to

4

Noonan to Walfish, with Walfish the only one to testify about it, in terms of his "understanding." Burd himself testified that no such plea offer was ever made. Likewise, Valentin-Morales's alleged lack of interest in that offer is also at best based on hearsay from Noonan. It was then based on Noonan's understanding, as Walfish himself did not testify that he ever personally communicated with Valentin–Morales about any plea offers. That said, Valentin-Morales claims he was not informed about any plea offer involving a five to ten year sentence. He further alleges that, after the PCRA hearing, he communicated this fact to his PCRA counsel, and that he asked PCRA counsel to supplement his amended PCRA petition with a new ineffectiveness claim on this point. PCRA counsel did not do so, and that ineffective assistance claim was never presented to the Pennsylvania state courts.

Valentin-Morales concedes that, because he did not present this claim during the PCRA process, it is procedurally defaulted for failure to exhaust and as a general matter cannot be presented now. 28 U.S.C. § 2254(b)(1); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). However, "[p]rocedural default may be excused when the petitioner can prove both 'cause' for the default and 'actual prejudice' that resulted from the failure of the state court to hear the claim." *Glenn v. Wynder*, 743 F.3d 402, 409-10 (3d Cir. 2014), *cert. denied,* 134 S. Ct. 2700 (2014). Indeed, "[u]nder *Martinez* [*v. Ryan*, 132 S. Ct. 1309 (2012)], the failure of collateral attack counsel to raise an ineffective assistance of trial counsel claim in an initial-review collateral proceeding can constitute 'cause' if (1) collateral attack counsel's failure itself constituted ineffective assistance of counsel under *Strickland*, and (2) the underlying ineffective assistance of trial counsel claim is 'a substantial one.'" *Id.* (citing *Martinez*, 132 S. Ct. at 1319).

I previously determined that Valentin-Morales's PCRA proceeding was an initial-review collateral proceeding for purposes of the *Martinez* exception. *See Valentin-Morales*, 2014 WL

5

4744560, at *7. I therefore held that Valentin-Morales's procedural default will be excused if he can show both that his PCRA counsel was ineffective and that he has a substantial claim that trial counsel was ineffective. *See id.*

The Commonwealth asserts that Valentin-Morales does not have such a substantial underlying claim, reasoning that trial counsel could not have been ineffective because no plea offer involving a five to ten year sentence was ever actually made. In an affidavit attached to the Commonwealth's supplemental briefing, now-deputy district attorney Burd states that he "was the sole attorney for the Commonwealth of Pennsylvania in this matter at all times during the pendency of this case until the conclusion of the jury trial" and that he "conducted all of the plea negotiations in this case." Affidavit of Jeffrey D. Burd, Esq., Doc. No. 27-1, at ¶¶ 4-5. Burd's affidavit confirms that "there was never a plea offer made to Mr. Valentin-Morales or his attorney that he could plead guilty to Aggravated Assault for a sentence of five to ten years imprisonment." *Id.* at ¶ 6. These sworn statements provide more specific, more direct evidence as to what occurred during plea negotiations, clearly outweighing the hearsay-on-hearsay from Walfish. Thus, I conclude that what I will refer to as the "5-10" offer is not a "substantial underlying claim," and therefore fails.

The Commonwealth claims that only one offer was ever made to Valentin-Morales: he could have pled guilty to both of the attempted criminal homicide counts, in exchange for which sentences on those counts would have run concurrently, with no deal as to the actual length of incarceration (what I will refer to as the "concurrent sentences" offer). *See id.* at ¶ 7. Valentin-Morales responds that neither a 5-10 offer nor a concurrent sentences offer was ever conveyed to him, so trial counsel was ineffective just the same. Traverse 6 n.1.

6

The magistrate judge agreed with the Commonwealth, reasoning that because the 5-10 offer never existed, trial counsel could not have been ineffective for failing to convey it, and therefore that PCRA counsel could not have been ineffective for failing to add a claim to that effect in the amended PCRA petition. *See* R&R 13. Likewise, the magistrate judge wrote that because the concurrent sentences offer was never mentioned during the PCRA proceedings, PCRA counsel could not have been ineffective in not raising a claim about the failure to convey that offer, either. *Id.* at 13 n.5.

I need not reach the question of PCRA counsel's ineffectiveness, however, because the claim of trial counsel ineffectiveness is not substantial. The Supreme Court has made clear that, to excuse procedural default, Valentin-Morales's underlying claim must be a "substantial" one, "which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 132 S. Ct. at 1318. *Martinez* instructs that in making this determination, courts should adopt the test normally used for deciding whether it is appropriate to issue a certificate of appealability: if "reasonable jurists" would find the claim to be "debatable." *See Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003); *Martinez*, 132 S. Ct. at 1318-19.

In *Frye*, the Supreme Court applied the usual *Strickland* formulation to a claim of ineffective assistance of counsel based on failure to convey a plea offer, holding that such a claim requires showing both that counsel's performance was deficient and that this deficient performance prejudiced the defendant. *Frye*, 132 S. Ct. at 1409. The Court then set out a three-part test to determine whether a defendant has actually been prejudiced in such a situation:

> To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they

7

> had the authority to exercise that discretion under state law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.

*Id.* at 1409. Even assuming that (1) trial counsel failed to convey the concurrent sentences offer; (2) the trial judge would have accepted the offer;[3] and (3) the sentence would have been shorter as a result, the claim still fails because Valentin-Morales has never once asserted that he would have accepted the concurrent sentences offer. The Third Circuit has "made clear that a defendant must show that he was actually prejudiced by his attorney's failure to communicate a pre-trial plea offer; that is, that he himself—not a reasonable defendant in his place—would have accepted the offer had it been communicated to him." *Wheeler v. Rozum*, 410 F. App'x 453, 458 (3d Cir. 2010) (nonprecedential); *see also United States v. Day*, 969 F.2d 39, 45 (3d Cir. 1992) ("Because we conclude that prejudice is theoretically possible, the question becomes whether [petitioner] alleges sufficient prejudice in fact, which requires consideration of whether [petitioner] would have accepted the alleged plea offer and whether the . . . court would have approved it."). Nowhere has Valentin-Morales alleged that he would have signed on to the concurrent sentences deal. The court cannot simply presume that Valentin-Morales would have agreed to plead guilty—especially with no guarantee as to the length of the resulting sentence.

This same logic applies to the 5-10 offer. Even if such a deal had been proposed, Valentin-Morales does not claim that "he himself—not a reasonable defendant in his place—would have accepted the offer had it been communicated to him." *Wheeler*, 410 F. App'x at 458. He argues only that he "should have been provided with the opportunity" to do so. Pet'r's Mem. of Law 30. The court cannot infer from the difference between 5 to 10 years and 28 ½ to

---

[3] "The decision whether to accept or reject a plea bargain is in the exclusive discretion of the trial judge and is not reviewable." *Com. v. Wilson*, 335 A.2d 777, 778 (Pa. Super. Ct. 1975). And in Pennsylvania, "no plea agreement exists unless and until it is presented to the court." *Com. v. McElroy*, 665 A.2d 813, 816 (Pa. Super. Ct. 1995).

60 years alone that Valentin-Morales personally would have accepted a guarantee of the former to eliminate a risk of receiving the latter—even knowing post-hoc that this risk was realized.

Without so much as a bare allegation to satisfy *Frye*'s first prong, the claim that Valentin-Morales was prejudiced does not have merit. *Cf. United States v. Allen*, 497 F. App'x 853, 854 (10th Cir. 2012) (nonprecedential) (holding that prejudice will not be found where petitioner "in no way indicates that she would have accepted a plea agreement or that counsel's advice about the plea agreement would have mattered"). And without any showing of prejudice, Valentin-Morales cannot be said to have a "substantial" underlying ineffectiveness claim. Because Valentin-Morales has not raised a substantial claim that he received ineffective assistance of trial counsel for failure to convey a plea offer, the *Martinez* exception to procedural default does not apply in this case. Valentin-Morales's ineffectiveness claim, therefore, remains unexhausted and cannot be considered here under 28 U.S.C. § 2254(b)(1). I must therefore deny the third and final ground for relief in Valentin-Morales's petition for a writ of habeas corpus.

An appropriate order follows.